## JOHNSON-LOCKE MERCANTILE CO. v. HOWARD.

### Sac. No. 778; July 25, 1901.

#### 65 Pac. 953.

**Sale of Crop of Raisins.**—Defendant, in Writing, Authorized Plaintiff to sell all his crop of raisins at specified prices and terms. Shortly after, plaintiff notified him by letter that sale had been so made, repeating the prices and terms and asking confirmation. Defendant answered that he wished to confirm sale to plaintiff of his entire crop at the prices and terms specified. Plaintiff answered, accepting the modification, making it the purchaser, and inquiring when the raisins would be ready for inspection and shipment. At the time defendant said the crop would be ready, plaintiff sent its agent, who inspected and accepted all except a few boxes, which he claimed were marked a grade too high; but said he would accept them at the grade they actually inspected. Afterward defendant refused to deliver any of the raisins. Held, that there was a contract binding on defendant to sell all his crop to plaintiff at the prices and terms specified.

**Sale—Tender.**—Where, on a Contract for the Purchase of Raisins, plaintiff tendered its check for the proper amount in payment, and no objection was made to the amount or form of the tender, defendant cannot afterward object that the tender was not in money.

**Sale of Crop of Raisins.**—Where Defendant Contracted to Sell his entire crop of raisins, to be Fresno grade, he could not invalidate the contract by marking boxes of a higher quality than the raisins would grade, but plaintiff was entitled to the crop at the actual grades by the standard agreed on in the contract.

APPEAL from Superior Court, Yolo County; E. E. Gaddis, Judge.

Action by the Johnson-Locke Mercantile Company against H. C. Howard. From a judgment for plaintiff and from an order denying a new trial defendant appeals. Affirmed.

E. R. Bush (R. Clark of counsel) for appellant; Hudson Grant for respondent.

PER CURIAM.—Action on contract for the sale and purchase of certain raisins. Plaintiff had judgment, from which, and from the order denying his motion for a new trial, defendant appeals.

The court found the following facts: (1) That on or about July 30, 1898, the plaintiff agreed to buy from defendant, and defendant agreed to sell to plaintiff, the entire crop of muscat raisins of defendant, produced in the year 1898, estimated to be eight carloads, at the following prices; to wit: For two-crown raisins, two and one-half cents per pound; for three-crown raisins, three cents per pound; for four-crown raisins, four cents per pound; for seedless raisins, two and one-half cents per pound—less five per cent of the gross amount computed at the above rates. Whole crop to be boxed in fifty-pound boxes, and to be shipped in October, 1898. Fresno grading. Terms cash on delivery f. o. b. Woodland, Cal. (2) That the crop fell far short of the estimate, there being only 2,192 boxes, as follows: 1,158 boxes of two-crown raisins, 734 boxes of three-crown, 88 boxes of four-crown, and 212 boxes of seedless raisins of the aggregate value of $2,840.02. (3) That on October 31, 1898, plaintiff offered to accept the above-mentioned quantities in fulfillment of defendant's agreement, and tendered him therefor the sum of $2,860.21 (being $20.19 in excess of the amount due), and demanded delivery, but defendant refused to deliver the raisins, or any part thereof, to plaintiff's damage in the sum of $814.72. (4) That the tender made by plaintiff was a draft on plaintiff, payable to defendant's order, for $2,860.21, "which the defendant refused to accept, and refused to deliver the raisins, or any part thereof; but at the time of the tender of the check aforesaid, the defendant made no objection to the said check, or to the amount thereof, or

to the form or manner of the plaintiff's tender." Defendant alleged in his answer, in effect, that negotiations were entered upon in July, 1898, for the purchase by plaintiff and sale by defendant of the raisins in question, and that the negotiations continued until about October 30, 1898, "but at no time was any final and conclusive agreement made or entered into by and between the parties in respect of said crop of raisins, or in respect to all the terms and conditions of such purchase and sale thereof, and said negotiations were, never finally consummated or brought to a close until on or about said thirtieth day of October, 1898"; that about said date plaintiff sent its duly authorized agent, one C. C. Kinsey, from San Francisco, to examine said crop of raisins, with a view of finally consummating said negotiations; that said agent made examination of the raisins, and thereupon refused to comply with the terms mentioned during the negotiations, and thereupon defendant "broke off all further negotiations with said plaintiff relative to such purchase and sale of said crop of raisins, and put an end to the same, and refused to have any further dealings with said plaintiff with regard thereto, and then and there so notified said plaintiff; that afterward, to wit on or about October 31st, and at the time mentioned in plaintiff's complaint, the said Kinsey, acting as the agent of said plaintiff, made the offer, tender and demand hereinbefore set out in this answer." As to these allegations the court found: (5) That they "are not true as therein made, but in relation thereto the court finds that on or about the thirtieth day of July, 1898, the plaintiff and defendant entered into negotiations which resulted in the agreement on the part of plaintiff to buy, and on the part of the defendant to sell, all of his crop of muscat raisins of the year 1898, as alleged in plaintiff's amended complaint," and as above stated in findings 1, 2 and 3; "that it is true that on or about the thirtieth day of October, 1898, the plaintiff sent its authorized agent, C. C. Kinsey, from San Francisco to the farm of defendant, to examine said crop and accepted the same." It was further found that the said Kinsey did not refuse to comply with the terms mentioned during said negotiations, nor did he repudiate the offers made by plaintiff during said negotiations; but that it is true that "defendant then and there broke off all further negotiations with plaintiff relative to

said purchase and sale of said crop of raisins, and refused to have any further dealings with plaintiff in regard thereto, and so notified said Kinsey''; and that on October 31, 1898, the said Kinsey made the tender and demand as already shown.

Appellant's points are: (1) That the evidence does not sustain the findings that an agreement was made on or about July 30, 1898; (2) that the finding that such agreement was made is irreconcilable with finding 5; (3) that the evidence does not support finding 5 that there was an acceptance October 30th; (4) that no tender was made.

The transaction must be judged by what the parties did and said in the course of their dealings. Defendant argues the case on the assumption that the agreement found by the court rested entirely on the letters written by the respective parties, one to the other. The contract, as we view the matter, was the result in part of a written memorandum signed by defendant July 18, 1898, in part of letters subsequently passing between plaintiff and defendant, in part of what occurred between the parties when plaintiff examined the fruit, accepted it, and made tender of payment. If the agreement rested wholly on the letters, it would become a matter of law whether they constituted a contract, and we would probably be called upon to state the correspondence in extenso. Not being such a case, there would seem to be no necessity for setting forth all the letters in full, and all the evidence bearing upon the question whether there was a contract as found by the court. The witness Kinsey, who was the agent of plaintiff, and conducted the negotiations on the part of plaintiff, testified that defendant came to plaintiff's office in San Francisco, and stated that he would have certain raisins on his farms near Woodland and Blacks, and desired to make sale of them. Defendant stated the price he wanted. Kinsey wrote in plaintiff's book used for such purposes, July 18, 1898, the following memorandum, which defendant then and there signed: "Henry Howard authorizes us to quote and sell entire crop of raisins within fifteen days, shipment October, 1898, at 2½ cents for 2-crowns, 3 cents for 3-crowns, 4 cents for 4-crowns, seedless 2½ cents; in 50-pound boxes; less 5 per cent. Estimated 8 car loads. Estimate to consist of one-sixth 4-crowns, one-sixth seedless, one-sixth 2-crowns, one-half

3-crowns. Fresno grading." On July 29th plaintiff wrote defendant that a sale had been made in accordance with the authority given in the memorandum of July 18th, repeating the gradings and prices in the memorandum, and closing, "Please confirm, and oblige." To this letter asking confirmation defendant wrote plaintiff on July 30th as follows: "I wish to confirm sale to you of my entire crop of muscat raisins at the following prices: 4-crown, 4 cents; 3-crown, 3 cents; 2-crown, 2½ cents; seedless muscat, 2½ cents; less 5 per cent commission to you. Terms cash. Delivery f. o. b. Woodland." It will be observed that this confirmation by defendant treated the memorandum as a sale to plaintiff, rather than as confirming an authority to sell. In other respects it confirmed the memorandum. Plaintiff again wrote to defendant August 1st, acknowledging his letter of July 30th, in which reference is made to defendant's letter as confirming the sale to plaintiff, apparently accepting the change from an authority to sell to an absolute sale to plaintiff, stating, "This is all in order," but, to avoid any misunderstanding, plaintiff restates the terms of the memorandum with some amplifications, but making no material changes as to prices or other conditions in the memorandum. The shipping point was stated "Woodland or common shipping point," whereas defendant had stated it as Woodland. Hearing nothing in reply, plaintiff again wrote defendant August 16th, asking confirmation, "so that we [plaintiff] may pass contract with our New York people." Defendant replied, August 18th, that, if his confirmation of July 30th was not sufficient, "we had better call the whole thing off," to which plaintiff replied that this was impossible, as the goods had been sold by plaintiff in accordance with the original memorandum. Plaintiff added: "However, let the matter stand just as it is for the present, and we will examine the raisins before shipment, and pay you cash for them against bill of lading as originally agreed. Please let us know by return mail what is the earliest possible date you think you can commence shipping these raisins, as, the earlier they are shipped, the better." Defendant replied August 27th: "In reply will say you wanted so many confirmations on raisin deal that I thought possibly you wished to call it off. I will be ready on my part to deliver the raisins just as fast as I can get.

them ready. Can't say how soon, but will try and get at least one car off in September." No further correspondence took place until, September 22d, plaintiff wrote inquiring how defendant was getting along with his drying, and making some other inquiries, and also suggested that the separate grades should be shipped in separate cars. Defendant replied September 24th that to ship each grade separately would delay shipment, and be a great inconvenience to defendant; and he closes, "I shall expect to deliver in car lots as fast as ready, irrespective of grades, as originally agreed upon." Plaintiff replied October 4th, regretting that each grade could not be shipped separately, but said the matter could be arranged so that there would be no additional expense to defendant, and adding: "We will have to suit your convenience. Let us know when you will have the raisins ready for examination, and we will do the needful at once." Toward the end of the month (October) plaintiff again wrote, inquiring how soon some raisins would be ready to ship, and on October 22d defendant replied: "The raisins are not quite all dry yet. Will have most of them ready by the 29th." An effort was made by plaintiff to get defendant to the telephone, which failing, plaintiff on October 25th wrote him, acknowledging receipt of his letter of the 22d, and asking how many raisins defendant would have ready by the 29th. This closed the correspondence, and about October 28th Kinsey went to Woodland on a request by telephone from defendant. The two went to defendant's packing-house at Blacks. There is evidence tending to show that Kinsey examined the raisins, and accepted all of them except eighty-eight boxes marked four-crowns, which were in fact only three-crowns. These he was willing to receive as three-crowns, but would not receive them as four-crowns. He also offered to take them, and ship them, and allow defendant what they brought. Defendant made no statement one way or the other at that time as to these four-crown raisins, but both parties proceeded to get ready to ship the raisins, defendant saying that he could put on four teams, and could deliver in time to make the shipment in October. They then went to Woodland, where defendant had some more raisins in a packing-house. Defendant gave Kinsey a list of the boxes there. Kinsey examined them, and found them satisfactory, and accepted them. Kinsey met defendant

48

later; had some further talk about shipping; told defendant he must telephone his house the quantities defendant had reported, so that the New York customer could be notified at once. This Kinsey did, and on returning from the telephone office met defendant, who then told him he would not deliver the fruit, and, on demand being made, positively refused. Kinsey, on the next day, again demanded the fruit, and on refusal tendered his check, drawn on plaintiff, for the full amount, as found by the court. This tender included the four-crown raisins at four-crown prices, and covered the entire lot at the agreed prices and as graded by defendant. There was evidence that the eighty-eight boxes of raisins marked four-crowns were in fact only three-crowns.

Defendant relies on Wristen v. Bowles, 82 Cal. 84, 22 Pac. 1136, and cases where the same principle there decided was involved. The contract there related to the sale of land, which plaintiff sought to prove by a series of letters written by the parties. The court held that the correspondence failed to show a meeting of the minds of the parties, and that oral testimony could not be received, as plaintiff had failed to prove an agreement in writing, there being no pretense of part performance. The rules of law laid down in that case need not be disputed. Before the court can determine that letters which have passed between parties constitute an agreement, they must show an unqualified acceptance of the actual thing proposed. There must be a proposal squarely assented to. It was so held, and that is undoubtedly the law. But here we may look to the entire transaction from its inception to its close. Not only may we look to the memorandum, and what took place at the time it was signed, and to the subsequent correspondence, but we may look to the acts and words of the parties after the correspondence ceased, and while they were giving a practical construction to their correspondence by their acts and words. Looking to all these facts and circumstances, they show entire agreement on all essential elements of the contract. There was no misunderstanding, even as to the right of plaintiff to examine the raisins, and to insist that they should come up to the grade agreed upon. Defendant cites Benjamin on Sales (6th Am. ed.), 488, to the point that the fact the goods must be examined and paid for later would make no difference as to the binding effect of the agreement. Plaintiff did not agree to

receive, and defendant did not expect to deliver, raisins other than according to Fresno grade, and the evidence was that the eighty-eight boxes of four-crowns did not come up to Fresno grading, and were properly rejected as such. But this rejection did not affect the validity of the contract. The evidence was that they were three-crowns, and plaintiff was willing to accept them as such. Plaintiff also offered to receive them and allow for four-crowns if they could be made to pass as such; and finally plaintiff concluded to accept them as four-crowns, and made tender for them as such. We think that the agreement found by the court clearly resulted from the evidence, and that the evidence sustains the finding.

2. It is doubtful whether any tender was necessary after defendant refused absolutely to deliver the goods. But it is certain that he cannot now be heard to object that the tender was insufficient because made by a check, and not in money. The court found and the evidence was that "at the time of the tender of the check aforesaid the defendant made no objection to said check, or to the amount thereof, or to the form or manner of the plaintiff's tender." Defendant testified: "The reason I refused to deliver the fruit and accept the money was because Kinsey refused to take my four-crown raisins at four-crown prices"; and he testified that he "did not object to the kind of money offered." All objections to the character of the tender must be considered as having been waived: Civ. Code, sec. 1501; Code Civ. Proc., sec. 2076.

3. We discover no irreconcilability between finding 1 and finding 5. Defendant's agreement was to sell his entire crop; but the raisins were to be Fresno grade, and plaintiff had the right to insist upon delivery according to this grade. Defendant could not invalidate the contract by boxing three-crowns and marking them four-crowns. He sold subject to Fresno grading, and, if he put three-crown raisins in boxes marked four-crowns, plaintiff had a clear right to insist that they should be paid for as three-crowns. As plaintiff had the right to these eighty-eight boxes as three-crown raisins, which the evidence showed they were in fact, defendant cannot complain that plaintiff was unwilling to pay for them as four-crowns. The judgment and order are affirmed.